UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
PETER M. SCHNAUDER,

                Plaintiff,          13 CV 6441 (SJ)(RLM)

                                          **MEMORANDUM**
       -against-                      **AND ORDER**

THE CITY OF NEW YORK, ET AL.,

                Defendants.
----------------------------------------------------------------X
A P P E A R A N C E S:

ROBERT J. ADINOLFI, ESQ.
129 New Dorp Plaza
Staten Island, NY 10306
Attorney for Plaintiff

NEW YORK CITY LAW DEPARTMENT
100 Church Street
New York, NY 10007
By:    Eric Brent Porter, Esq.
Attorney for Defendants

JOHNSON, Senior District Judge:

       Plaintiff Peter M. Schnauder, also known as Peter Schbauder, ("Schnauder" or "Plaintiff") brings this action, pursuant to 42 U.S.C. § 1983 ("Section 1983"), alleging that Defendants violated his Eight Amendment rights under the United States Constitution by failing to provide adequate medical care during his incarceration. Plaintiff also asserts that, by doing so, Defendants violated Title II

1

of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq., (the "ADA"), and Section 504 of the Rehabilitation Act of 1973 (the "Rehabilitation Act"). Defendants the City of New York and Dora Schriro, as Commissioner of the Department of Corrections ("DOC") move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the action for failure to state a claim. Plaintiff cross-moves, pursuant to Rule 15, for leave to amend the Complaint.[1] For the reasons stated below, Plaintiff's cross-motion is GRANTED, and Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.

## I.     Background

The following factual recitation is derived from the Complaint. On July 22, 2012, Plaintiff was incarcerated for one year at Otis Bantum Correctional Center ("OBCC") on Riker's Island, New York, in connection with an assault charge. In an altercation with members of the New York City Police Department prior to being taken into custody, Plaintiff suffered an open fracture on his nose, although Plaintiff does not recall the precise details of how he was injured. On July 27, 2012, he was examined by Dr. Theodore Kramer on Riker's Island, who determined that Plaintiff had a broken nose and referred Plaintiff to Bellevue

---

[1] Plaintiff concedes in his reply papers that the New York City Department of Correction is not a suable entity.

Hospital ("Bellevue") for surgery. At that time, Plaintiff suffered from extreme pain, bleeding, and tearing of the eyes.

In September and October, Plaintiff was examined by two physicians at Riker's Island, both of whom noted that Plaintiff had a bone fracture, but Plaintiff does not state whether these physicians referred him for surgery. In November, Dr. Yousef Mahadin referred Plaintiff to Bellevue for surgery on his nose. On December 20, 2012, he was seen by a physician's assistance, who informed Plaintiff that he would be sent to Bellevue for surgery. Sometime in February or March 2013, Plaintiff was informed by another physician at Bellevue that he would return the following day for surgery on his nose.

Plaintiff was not sent out for any of the recommended surgeries, and, in March, he filed a medical grievance with the DOC. Plaintiff was authorized to be sent for surgery on June 20, 2013, which, however, was three days following his scheduled release date. On April 15, 2014, Dr. Leigh Jay Lachman examined Plaintiff, and found that Plaintiff had an old deviated septum requiring extensive surgery, and stated that the nose may never be restored to its original condition.[2]

Plaintiff commenced this action on November 20, 2013, contending that, despite the doctor's recommendations that he should undergo surgery, none of the

---

[2] This appears to be subsequent to the commencement of Plaintiff's law suit. Nonetheless, whether this is a typographical error or occurred as stated is inapposite, as this bears no impact on the outcome of the motion.

referrals were heeded by the prison personnel, and that despite visits to on-site clinics and exhaustion of the internal grievance process, Plaintiff was not sent out for the recommended surgery. He states that the medical staff contacted the transportation department to arrange for his transportation to Bellevue. As a result, Plaintiff endured extreme pain and suffering, bleeding of the nose, headaches, tearing of the eyes throughout his one-year incarceration. He further contends that his nose swelled and was physically deformed. Plaintiff submits that the failure to send him to Bellevue for treatment violated the Eight Amendment, Title II of the ADA, and Section 504 of the Rehabilitation Act.

Defendants the City of New York and Schriro now move to dismiss the Complaint on the grounds that Plaintiff fails to state a cause of action. In Response, Plaintiff moves to amend the Complaint. For the reasons outlined below, Plaintiff's motion is granted, and Defendants' motion is granted in part and denied in part.

## II. Discussion

### A. Leave to Amend the Complaint

Under Rule 15 of the Federal Rules of Civil Procedure, the Court grants leave to amend a complaint "freely" and "when justice requires." Fed. R. Civ. P. 15(a)(2). Generally, amendments are favored because they "tend to facilitate a proper decision on the merits." Sokolski v. Trans Union Corp., 178 F.R.D. 393,

396 (E.D.N.Y. 1998). A Rule 15(a) motion may be denied for "undue delay, bad faith, futility of the amendment, or prejudice to the opposing party." Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc., 404 F.3d 566, 603 (2d Cir. 2005) (citation omitted).

Plaintiff concedes that his initial Complaint was rife with typographical errors and lacked sufficient details. He states that the Amended Complaint remedies these deficiencies. Defendants oppose on the grounds of futility, but do not allege bad faith, undue delay or prejudice. Accordingly, the Court grants Plaintiff's cross-motion to amend the Complaint, as it finds below that the Amended Complaint does in fact state a cause of action.

### B. Motion to Dismiss

In considering a motion to dismiss a complaint pursuant to Rule 12(b)(6) for failure to state a claim, the Court must accept the factual allegation asserted in the complaint as true and must draw all reasonable inferences in favor of the Plaintiff. See Perez v. Hawk, 302 F. Supp. 2d 9, 16 (E.D.N.Y. 2004). "'[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss,' and '[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662 (2009)). At the 12(b) stage, "[t]he issue is

not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims." Branham v. Meachum, 77 F.3d 626, 628 (2d Cir. 1996).

On a motion to dismiss, the Court may refer "to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." Brass v. Am. Film Tech., Inc., 987 F.2d 142, 150 (2d Cir. 1993) (citation omitted); see also Hayes v. Coughlin, No. 87 Civ. 7401, 1991 WL 220963, at *1 (S.D.N.Y. Oct. 16, 1991) ("Papers outside a complaint may be incorporated by reference into the complaint when such papers are referred to within the body of the complaint").

### a) Eight Amendment

Plaintiff asserts the first cause of action for cruel and inhuman treatment in violation of the Eight Amendment against "unknown defendants" employed in the transportation division of the DOC who failed to heed his physicians' orders to transport him for surgery at various times throughout his incarceration, and against "unknown defendants" who adjudicated Plaintiff's medical grievance and approved him for surgery three days after his scheduled release date.

The Eight Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VII. To satisfy an Eight Amendment violation

arising out of inadequate medical treatment, a prisoner must prove "deliberate indifference to [his] serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104 (1976). A prisoner must satisfy two requirements, one objective and one subjective, to prevail on a "deliberate indifference" claim. Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998). First, the objective test requires the prisoner must prove that the alleged deprivation of medical treatment was "sufficiently serious," such that there was a medical need was a "condition of urgency, one that may produce death, degeneration, or extreme pain." See Hemmings v. Gorczyk, 134 F.3d 104, 108 (2d Cir. 1996). Second, the subjective test requires the prisoner to prove that the charged officials acted with a deliberate indifference to his condition. See id.

### i. Objective Test: Serious Medical Condition

"A serious medical condition exists when 'the failure to treat a prisoner's condition could result in further significant injury.'" Lasher v. City of Schenectady, 2004 WL 1732006, at *5 (quoting Chance, 143 F.3d at 702). Conditions qualify as serious are if they are "urgent" or may result in "degeneration" or in "extreme pain." Id. The inquiry is fact-intensive and should bear in consideration whether a doctor found the condition worthy of treatment, whether the condition affected the prisoner's daily activities, or whether the prisoner sustained substantial and chronic pain. See id.

7

Here, Plaintiff submits that his broken nose was repeatedly diagnosed by various physicians, and was referred at least thrice for corrective treatment and surgery. He contends that he suffered from severe pain, tearing and watering of the eyes, bleeding and difficulty breathing. At this 12(b)(6) stage, the Court accepts the allegations as true and agrees that Plaintiff's broken nose is sufficiently serious as to satisfy the objective prong of the test.

### ii. Subjective Test: Deliberate Indifference

Under the subjective test, prison officials have been found to be "deliberately indifferent" when they defy the express instructions by a prisoner's doctor. See Gill v. Mahoney, 824 F.2d 192, 196 (2d Cir. 1987). Here, Plaintiff alleges that "unknown defendants" employed by the DOC deliberately ignored the doctors' instructions to refer Plaintiff for surgery for over 300 days. He asserts that the identities of the individual defendants are in the sole custody of the Defendants and requests a Valentin order permitting Plaintiff to serve identification interrogatories. In Valentin v. Dinkins, the Second Circuit addressed the issue of unknown identities and concluded that the district court below should have permitted additional discovery prior to dismissing the complaint. See Valentin v. Dinkins, 121 F.3d 72 (2d Cir. 1997). Defendants do not oppose the imposition of the Valentin order, but request that a conference be scheduled to discuss the scope

of the discovery requested.  In light of the above, the Court declines to dismiss this portion of the Complaint at this stage.

### b) Claims Against the Municipality

Plaintiff asserts a Monell claim in his second cause of action. Plaintiff maintains that inmates are routinely subject to abuse and hostility when they complain about their medical needs, and that there is no supervision of referrals or instructions by the chain of command with regard to medical transportation.

It is well-settled that a municipality may not be sued under Section 1983 based on a theory of respondeat superior. See Monell v. Dep't of Soc. Servs., 436 U.S. 659, 691–94 (1978); see also Sorlucco v. New York City Police Dep't, 971 F.2d 864, 870 (2d Cir. 1992) ("A municipal[ity] may not be held liable under § 1983 simply for the isolated acts of its employees"). Municipal liability attaches only if Plaintiff shows that the violation of his constitutional rights resulted from municipal policy or custom. Id. at 694-95. Plaintiff must provide sufficient description of the nature of the policy that result in unconstitutional behavior. See Alfaro v. Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir. 1987). The Second Circuit has explicitly held that "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show municipal policy." DeCarlo v. Fry, 141 F.3d 56, 61 (2d Cir. 1998).

9

Here, Plaintiff's allegations lack sufficient specificity to support his claim that the City of New York has a policy of ignoring the inmates' complaints, and he points only to his isolated incidents. Plaintiff also concedes that his Complaint does not sufficiently state a cause of action for a Monell claim and, like his Eight Amendment claim, requests additional discovery. However, it is unlikely that any additional information received will remedy the deficiency, as Plaintiff's claim will still be premised on his isolated incident occurring below the policy-making level, which is insufficient to maintain such a claim. Accordingly, the portion of Defendants' motion seeking to dismiss this cause of action is granted.

### c) Americans with Disabilities Act

Plaintiff's third cause of action asserts that the City of New York, through its agents and employees, denied him meaningful medical access normally given to all inmates by refusing to transfer him to Bellevue for surgery, in violation of Title II of the ADA and Section 504 of the Rehabilitation Act.

> The ADA provides that:
>
> No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subject to discrimination by any such entity.

42. U.C.S. § 12132; See also Tsombanidis v. W. Haven Fire Dep't, 352 F.3d 565, 573 (2d Cir. 2003). The Rehabilitation Act prohibits discrimination against any

individuals on the basis of their disability "under any program or activity receiving federal financial assistance." 29 U.S.C. § 794(a); see also United States Dep't of Trans. v. Paralyzed Veterans of Am., 477 U.S. 597, 611 (1986). The ADA and the Rehabilitation Act "impose identical requirements," and courts therefore analyze claims under both statutes in tandem. Rodriguez v. City of New York, 197 F.3d 611, 618 (2d Cir. 1999). To state a claim for the ADA, a prisoner must show that: (1) he is a qualified individual with a disability; (2) he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) he was excluded from these services because of his disability. See Phelan v. Thomas, 439 Fed. Appx. 48, 50 (2d Cir. 2011).

Here, Plaintiff fails to establish that Defendants violated the ADA or Rehabilitation Act, by failing to send him for surgery. Plaintiff fails to establish that he is a qualified individual with a disability. When assessing whether or not a purported injury or condition constituted a qualifying disability, courts consider: "(1) whether the plaintiff suffered from a physical or mental impairment; (2) whether the life activity upon which the plaintiff relied . . . constitutes a major life activity under the ADA; and (3) whether the plaintiff's impairment substantially limited the major life activity." Jacques v. DiMarzio, Inc., 386 F.3d 192, 201 (2d Cir. 2005). Plaintiff fails to allege how his fractured nose impacted a major life activity.

Further, Plaintiff does not allege that he was excluded from any programs due to his supposed disability. Plaintiff merely alleges that he was not provided with adequate treatment for his broken nose, and not the he was denied treatment because of his broken nose. Such allegation does not state a claim under the ADA. See Elbert v. New York State Dep't of Corr. Servs., 751 F. Supp. 2d 590, 595 (S.D.N.Y. 2010) ("Courts routinely dismiss ADA suits by disabled inmates that allege inadequate medical treatment, but do not allege that the inmate was treated differently because of his or her disability.").

The cases cited by Plaintiff are distinguishable, because the inmates in those cases were not denied medical services to treat their disability, but rather were denied other services because of their disability. C.f. Hinosja v. Livingston, 2014 WL 199022 (S.D. Texas 2014) (finding that the prison facility was aware that an inmate's medical condition rendered him vulnerable to extreme temperatures and failed to provide him with heat-sensitive housing); McNally v. Prison Health Servs., 46 F.Supp.2d 49, 58-59 (D.Me. 1999) (concluding that an HIV patient's claim of discriminatory denial of prescription services provided to general prison population states a sufficient ADA claim); Clarkson v. Coughlin, 898 F. Supp 1019, 1037-38 (S.D.N.Y. 1995) (granting relief under the ADA where hearing-impaired inmates alleged that their rights were violated by the prison's practice of conducting disciplinary, grievance, and parole hearings without providing

interpretive services or assistive devices); Accordingly, this portion of Defendants' motion is granted.

All remaining issues have been considered and found to be without merit.

### C. <u>Conclusion</u>

In light of the about, Plaintiff's motion to amend the complaint is GRANTED. Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. Defendants' motion is granted to the extent that Plaintiff's second cause of action for violations under <u>Monell</u> and third caus of action for violations of the ADA are dismissed.

SO ORDERED.

Dated: March 31, 2015 _____/s/_____
     Brooklyn, New York     Hon. Sterling Johnson, Jr., Senior U.S.D.J.